UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

SCOTTSDALE INSURANCE
COMPANY,
        Plaintiff,

v.                                                     C.A. No. 10-430 ML

WAYNE BITGOOD and
THE GORDON GREENE POST NO. 27
OF THE AMERICAN LEGION,
        Defendants.

## MEMORANDUM AND ORDER

Plaintiff, Scottsdale Insurance Company ("Scottsdale") moves for summary judgment in this declaratory judgment action seeking a declaration from this Court concerning its rights and obligations pursuant to an insurance contract issued to Defendant, The Gordon Greene Post No. 27 of the American Legion ("the Post"). Specifically, Scottsdale petitions this Court for a judgment finding that Scottsdale does not have a duty to defend or indemnify the Post in a state court negligence action. For the reasons stated herein, Scottsdale's motion for summary judgment is granted.

### I. Standard of Review – Summary Judgment

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" if the pertinent evidence is such that a rational factfinder could resolve the issue in favor of either party, and a fact is "material" if it "has the capacity to

sway the outcome of the litigation under the applicable law." National Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir. 1995).

The moving party bears the burden of showing the Court that no genuine issue of material fact exists. Id. The Court views all facts and draws all reasonable inferences in the light most favorable to the nonmoving party. Id. Fed. R. Civ. P. 56 "requires the parties to submit admissible evidence in supporting and opposing motions for summary judgment." Feliciano v. Rhode Island, 160 F.3d 780, 787 (1st Cir. 1998).[1]

## II. Background

On February 4, 2009, Defendant Wayne Bitgood ("Bitgood") visited the Post in Hope Valley, Rhode Island. At some point an altercation arose inside the Post between Bitgood and Ryan Gardiner ("Gardiner"). During the altercation, Bitgood brandished a knife; Gardiner however grabbed the knife from Bitgood's grasp and tossed it aside. After tossing the knife aside, Gardiner "kick[ed] and punch[ed]" Bitgood in the abdomen and head area. Scottsdale's Statement of Undisputed Facts at ¶ 24. Eventually, patrons in the Post disengaged the combatants. Gardiner then left the bar and "dr[o]ve off." Id. at ¶ 20. Bitgood informed patrons that he was "okay just bleeding from his lip." Id. at ¶ 24. At some point after Gardiner left the Post, Bitgood went outside. Thereafter, an individual came "running" into the Post imploring someone to "get [Bitgood] back in the building, [and] lock the doors because [Gardiner] just

---

[1] In support of its motion, Scottsdale filed a statement of undisputed material facts. In support of his opposition, Defendant Wayne Bitgood filed a statement of additional undisputed facts. Although the Post objected to Scottsdale's motion, the Post relied upon the arguments set forth in Defendant Bitgood's memorandum and did not file a separate memorandum or statement of undisputed or disputed facts. The statements of undisputed facts submitted by the parties contain a significant amount of hearsay. See generally Feliciano, 160 F.3d 780. (Rule 56 requires party to submit admissible evidence in supporting or opposing motion for summary judgment). However, neither Scottsdale or Bitgood filed a statement of disputed facts or otherwise objected. Accordingly, the Court deems the facts in both statements as undisputed. See generally DRI LR Cv 56(a)(3) & (5).

pulled in the parking lot." Id. Upon his return to the Post's parking lot, Gardiner approached Bitgood, "hit" him, and when Bitgood "fell" to the ground, Gardiner kicked him "at least five times." Id. at ¶ 33.

At some point the Hopkington, Rhode Island Police were dispatched to the Post.[2] Upon arrival, a Hopkington police officer observed Bitgood lying on the ground outside the Post. Bitgood was conscious, but he was bleeding from the mouth. Bitgood sustained serious injuries and was transported by ambulance to Kent County Hospital.

Bitgood has filed a lawsuit in state court against the Post for injuries he sustained as a result of the altercation. Scottsdale insures the Post pursuant to a commercial liability insurance policy. The policy provides in pertinent part:

> SECTION I – COVERAGES
> COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY
> 1. Insuring Agreement
> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages. However, we will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply. . . .

Scottsdale Statement of Undisputed Facts at ¶ 40; Scottsdale Exhibit B (capitals in original). The policy also includes an assault and/or battery exclusion which reads as follows:

> THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.
> ASSAULT AND/OR BATTERY EXCLUSION

---

[2] Although the record is not clear when the police were contacted or by whom, Bitgood contends that Joan Maggs, a Post employee, stated that the police were not contacted in response to the first altercation inside the Post. In support of this factual assertion Bitgood cites to his Exhibit C, page 15, lines 17-19. The Court has reviewed exhibit C, page 15 and finds that it does not support the factual assertion that the police were not contacted in response to the first altercation. Scottsdale, however, failed to dispute this assertion; consequently, it is admitted for purposes of disposing of this motion. See DRI LR Cv 56.

3

> This endorsement modifies insurance provided under the following:
> COMMERCIAL GENERAL LIABILITY COVERAGE PART
> ERRORS AND OMISSIONS COVERAGE PART
> LIQUOR LIABILITY COVERAGE PART
> The following exclusion is added to the Exclusions section:
> This insurance does not apply to 'injury,' 'bodily injury,' 'property damage,'
> 'error or omission,' or 'personal and advertising injury,' arising from:
> 1. Assault and/or Battery committed by any insured, any employee/ 'employee' of any insured, or any other person;
> 2. The failure to suppress or prevent Assault and/or Battery by any person in 1 above;
> 3. The selling, serving or furnishing of alcoholic beverages which results in an Assault and/or Battery.
> 4. The negligent;
>    a. Employment;
>    b. Investigation;
>    c. Supervision;
>    d. Reporting to the proper authorities, or failure to report; or
>    e. Retention
> of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by paragraphs 1., 2., or 3. above.

Id. (capitals in original).

### III. Analysis

Scottsdale argues that it does not have a duty to defend and indemnify the Post because the assault and battery exclusion bars coverage for Bitgood's injuries. Bitgood counters, however, that because the underlying complaint alleges only negligence, Scottsdale has a duty to defend. Bitgood argues that the assault and battery exclusion does not exclude coverage for injuries arising out of negligent training. Bitgood also contends that the exclusion language is ambiguous; thus, he argues the language must be strictly construed against Scottsdale.

Under Rhode Island law, in general, the duty to defend an insured is determined by applying the pleadings test. American Commerce Insurance Co. v. Porto, 811 A.2d 1185 (R.I. 2002).

4

> That test requires the trial court to look at the allegations contained in the complaint, and if the pleadings recite <u>facts</u> bringing the injury complained of within the coverage of the insurance policy, the insurer must defend irrespective of the insured's ultimate liability to the plaintiff. That duty, when blindly applied, may . . . result in the defense of groundless, false or fraudulent suits, but the insurer is duty bound nonetheless.

<u>Id.</u> at 1191 (emphasis added) (internal quotation marks and citation omitted); <u>see also</u> <u>Flori v. Allstate Insurance Co.</u>, 120 R.I. 511, 513, 388 A.3d 25, 26 (1978) ("if the complaint discloses a statement of facts bringing the case potentially within the risk coverage of the policy the insurer will be duty-bound to defend irrespective of whether the plaintiff[] in the tort action can or will ultimately prevail"). If the allegations, however, fall outside the policy coverage, the insurer has no duty to defend. <u>Craven v. Metropolitan Property and Casualty Insurance Co.</u>, 693 A.2d 1022 (R.I. 1997). The pleadings test "determines an insurer's duty to defend even if the known facts conflict with the facts alleged in the third-party complaint." <u>Flori</u>, 120 R.I. at 514, 388 A.2d at 26; <u>see also</u> <u>Thomas v. American Universal Insurance Co.</u>, 80 R.I. 129, 134, 93 A.2d 309, 312 (1952) ("[f]acts made known before the action is tried or during the process of litigation do not alter [the] rule"). Any doubts concerning the adequacy of the pleadings to encompass an occurrence within the scope of the policy must be resolved in favor of the insured. <u>Allstate Insurance Co. v. Russo</u>, 641 A.2d 1304 (R.I. 1994).

In the state court complaint Bitgood alleges that on or about February 4, 2009, while on the Post's premises he "was injured as a result of the negligence of the defendant, its employees and/or agents." State Court Complaint; Scottsdale Exhibit A at ¶ 4. The allegation of negligence against the Post is wholly conclusory. The complaint does not contain any *facts* to determine the contours of the claim. The Court is cognizant of the principles of the pleadings

test and its direction that the Court only look to the allegations in the complaint in determining an insurer's duty to defend. In analyzing a duty to defend, however, "a court may inquire into the underlying facts to avoid permitting the pleading strategies, whims, and vagaries of third party claimants to control the rights of parties to an insurance contract." Winnacunnet Cooperative School District v. National Union Fire Insurance Co. of Pittsburgh PA, 84 F.3d 32, 35-36 (1st Cir. 1996) (internal quotation marks and citation omitted). This Court finds it appropriate in this matter to look beyond the *one* conclusory allegation in the complaint in this instance. Id.; Cf. Mount Vernon Fire Insurance Co. v. Stagebands, Inc., 636 F. Supp. 2d 143, 147 (D.R.I. 2009) ("where extrinsic evidence establishes that the ultimate question of coverage can be determined as a matter of law on undisputed facts, [there is] no reason to prevent an insurer from seeking summary adjudication that no potential for liability exists and thus that it has no duty to defend") (internal quotation marks and citation omitted).

It is undisputed that Bitgood was injured as a result of the assault by Gardiner. Bitgood, however, argues that the Post was negligent in its training of its employees which led to the altercation causing his injuries. Bitgood contends that the police were not called in response to the first altercation inside the Post. Bitgood also argues that after the incident the Hopkinton Licensing Board ordered "the staff of the [Post] to undergo mandatory retraining."[3] Defendant's Memorandum of Law in Support of His Objection to the Plaintiff's Motion for Summary Judgment at 2. Bitgood concludes that the because the insurance policy does not contain an exclusion for "negligent training," Scottsdale has a duty to defend the state court action.

Scottsdale argues that because Bitgood's injuries arose from the assault and battery by

---

[3] It is not clear from the record what type of retraining the staff of the Post was to undergo.

6

Gardiner, Bitgood's claim is excluded no matter what label Bitgood places on the underlying theory of liability. Although Bitgood acknowledges that the assault and battery exclusion is broad, Bitgood contends that the exclusion is circumscribed by paragraph four's listing of negligent acts for which coverage is excluded. Bitgood suggests that it is conspicuous that negligent training is not listed in paragraph four. Bitgood avers that a reasonable reading of paragraph four is that there is no coverage for the negligent acts listed in the paragraph but that there is coverage for injuries arising out of other negligent acts not specifically listed in the paragraph. Bitgood contends that paragraph four incorporates and modifies the preceding paragraphs in the exclusion, thus concluding that paragraph one only excludes claims for "literal" assault and battery and not claims predicated upon specific negligent acts or omissions. Id. at 9. Bitgood argues that if paragraph one is *alone* sufficient to exclude *any* injuries arising out of an assault and battery, the following three paragraphs are superfluous and can only be read as creating ambiguity concerning what is excluded and what is not.

An "exclusion from coverage in [an] . . . insurance policy must be clear and unambiguous." Porto, 811 A.2d at 1192. Rhode Island courts do not "deviate from a policy's literal language unless [a court] conclude[s] it is ambiguous." Id. In reviewing policy language, a court views a policy in its entirety giving terms their "plain, ordinary and usual meaning." Id. Courts concentrate on what an "ordinary reader of the policy would have understood the policy's terms to mean if he or she had read them." Id. Although a court should not engage in "mental or verbal gymnastics" to "hurdle" the plain language in a policy, if the terms of the policy are subject to more than one reasonable interpretation, the policy will be construed in favor of the insured. Id. at 1193.

7

Although neither party brings it to the Court's attention, Bitgood's arguments have been rejected by another court in a case involving Scottsdale, a similar fact pattern, and strikingly similar contract language. See McAlister v. Scottsdale Insurance Co., No. 1:09CV118 SNLJ, 2010 WL 3842407 (E.D. Mo. Sept. 27, 2010). In McAlister, the plaintiff was at a tavern when a fight occurred during which the plaintiff was stabbed. Id. at *1. The plaintiff sued the tavern in state court for the injuries he sustained. Id. Although the tavern reported the claim to its insurer, Scottsdale, Scottsdale declined to defend the tavern based on an assault and battery exclusion in its insurance policy. Id. The state court found that the tavern was negligent in its failure to properly hire or train employees and issued a judgment against the tavern in the amount of $450,000. Id. at *1,2. The plaintiff then filed a garnishment action against Scottsdale in state court and Scottsdale removed that action to federal court. Id. Scottsdale then filed a counter-claim against the plaintiff and a cross-claim against the tavern for a declaratory judgment that Scottsdale did not owe a duty to defend or indemnify the tavern. Id.

Generally, assault and battery exclusions take one of three forms: (1) simply excluding claims that arise out of assault and battery; (2) additionally excluding claims arising out of the failure to prevent or suppress an assault and battery; and (3) include language encompassing (1) and (2) and also explicitly excluding claims for particular acts of negligence that result in assault and battery. Id. at *3. The McAlister assault and battery exclusion (which is substantially similar to the exclusion under review in this matter) contained all three of the typical assault and battery exclusions. Id. at *4. In McAlister, as in this matter, there was "no question that plaintiff's injuries . . . 'ar[o]se from' an assault and battery." Id. The plaintiff in McAlister, like Bitgood, argued that the assault and battery exclusion did not apply to his claim because

negligence was treated as an independent source of liability by the exclusion and although specified acts of negligence were excluded, negligent training was not. Id.

The McAlister court concluded that the exclusionary language was not ambiguous and that plaintiff's claim was excluded by the terms of the contract. Id. at *4-6. First, the court concluded that paragraph one of the exclusion[4] prohibited the plaintiff's claim because the plaintiff's injuries arose from an assault and battery, and in Missouri, an assault and battery exclusion barred negligence actions alleging a failure to protect a patron. Id. at *4. The court also found that paragraph two of the exclusion[5] barred the claim because paragraph two excluded claims for "failure to suppress or prevent Assault and/or Battery." Id. at *5 (internal quotation marks and citation omitted). The McAlister court also held that it did not need to address the negligence language of paragraph three of the exclusion[6] because negligence claims were "already barred by the [e]xclusion's first two paragraphs, and the [e]xclusion's third paragraph seem[ed] to be merely an effort to be overly cautious and, ironically, to avoid litigation like this." Id. at *5. The court held, however, that even if the negligence provision created an ambiguity, the claim of negligent training would still be excluded because the negligence paragraph excluded claims of negligence for employment investigation, supervision, reporting, and retention of employees and the "plain and ordinary meaning of [the negligence paragraph]

---

[4]Paragraph one of the McAlister exclusion excluded claims "arising from: 1. Assault and/or Battery committed by any insured, any employee of any insured, or any other person[.]" McAlister, 2010 WL 3842407 at *1.

[5]Paragraph two of the McAlister exclusion excluded claims "arising from: . . . The failure to suppress or prevent Assault and/or Battery by any person in [paragraph one]. . . ." McAlister, 2010 WL 3842407 at *1.

[6]Paragraph three of the McAlister exclusion excluded claims "arising from: . . . The negligent: a. Employment; b. Investigation; c. Supervision; d. Reporting to the proper authorities, or failure to so report; or e. Retention of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by paragraphs 1 or 2 . . . ." McAlister, 2010 WL 3842407 at *1 (emphasis added).

encompasses 'training' of employees, which is an element of supervision." Id. "[T]raining of an employee is one specific element of the 'supervision' and 'control' of an employee. Therefore [plaintiff's] claim for negligent training fits squarely and unambiguously with the exclusion." Id. (internal quotation marks and citation omitted). Moreover, McAlister concluded that "the Scottsdale Policy itself ha[d] been litigated in other courts to the same effect: even claims for negligence not specifically enumerated [in the negligence paragraph were] excluded from coverage." Id.

This Court finds that the assault and battery exclusion is not ambiguous; thus the terms of the exclusion must be applied as written and given their plain and ordinary meaning. See generally Bush v. Nationwide Mutual Insurance Co., 448 A.2d 782 (R.I. 1982). While the Rhode Island Supreme Court has not addressed assault and battery exclusions in insurance contracts, two judges on this court have. See Mount Vernon Fire Insurance Co., 636 F. Supp. 2d 143 (assault and battery exclusion barred coverage for injury as a result of shooting in nightclub parking lot); Anglo American Insurance Co. Ltd. v. Shooters at India Point, Inc., 959 F. Supp. 115 (D.R.I. 1997) (assault and battery exclusion barred coverage for assault near nightclub by unknown individuals). In most jurisdictions broad assault and battery exclusions in insurance contracts bar coverage for negligence claims when the underlying act is an assault and battery. Mount Vernon, 636 F. Supp. 2d at 148. Those jurisdictions focus on the operative act causing the injury and not the theory of liability pled. Id.; see also Peters v. United National Insurance Co., 762 N.E. 2d 881, 884 (Mass. App. Ct. 2002) (it is the "source from which the plaintiff's personal injury originates rather than the specific theories of liability alleged . . . which determines the insurer's duty to defend") (internal quotation marks and citation omitted).

> In insurance [contract] cases, the concern is ordinarily not with the question of 'culpability' or why the injury occurred, but only with the nature of the injury and <u>how it physically happened</u>, which must then be compared with the language of the insurance policy to determine whether this type of injury from this type of physical cause was intended to be covered by the policy.

Porto, 811 A.2d at 1195 (emphasis added). Thus, an insured's right to coverage is determined by "the nature of the bodily injuries suffered by plaintiff and how the alleged torfeasor[] supposedly inflicted" the injuries. <u>Id.</u>

It is undisputed that Bitgood's injuries "physically happened" as a result of the assault by Gardiner. See generally <u>id.</u> While the theory purportedly pled by Bitgood is the Post's negligent training of its employees, "the operative act giving rise to any recovery is the assault. . . . Merely because the insured might be found liable under some theory of negligence does not overcome the policy's exclusion for injury resulting from assault." <u>Downtown Bar & Grill, Insurance Co. v. Sphere Drake Ins. Co.</u>, No. 96 Civ. 6510 (DLC), 1997 WL 188139 at *4 (S.D.N.Y. April 17, 1997) (internal quotation marks and citation omitted). The excluded act, the assault and battery of Bitgood by Gardiner, was the operative act giving rise to Bitgood's lawsuit against the Post. See generally <u>id.</u>

## IV. Conclusion

Bitgood's claim against the Post for negligent training is clearly excluded under the insurance contract because (1) it is prohibited pursuant to the clear language of paragraph one of the exclusion, (2) the claim, by its very terms, relates to the insured's failure to suppress or prevent an assault and battery as excluded in paragraph two, and (3) because the claim is subsumed by the negligence exclusions contained in paragraph four of the exclusion. <u>See</u>

11

generally McAlister, 2010 WL 3842407; Anglo American, 959 F. Supp. 115 (assault and battery exclusion applies where it is alleged that the assault is related to the insured's negligent hiring or supervision of employees); Winnacunnet, 84 F.3d 32 (exclusion for a claim arising out of assault and battery bars coverage for a claim that an insured negligently allowed an assault to occur). Consequently, this Court declares that Scottsdale does not have a duty to defend or indemnify the Post in the underlying state court action.

SO ORDERED.

/s/ Mary M. Lisi
Mary M. Lisi
Chief United States District Judge
September 6, 2011.